**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | No. 03 C 5328 |
| v. | ) | |
| | ) | |
| SALEEM SHIRAZI | ) | HONORABLE DAVID H. COAR |
| | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Saleem Shirazi entered a plea of guilty to participating in a conspiracy to possess and utter counterfeit traveler's checks, pursuant to a plea agreement. This Court sentenced him to sixty months imprisonment. A federal court in Texas also sentenced Petitioner to a consecutive thirty-three month term of imprisonment for his role in an unrelated credit card conspiracy. *See United States v. Saleem Agajani*, No. 4:97-CR-56 (E.D. Tex.). Shirazi directly appealed his sentence, alleging that the District Court erred in finding that he played a managerial role in the conspiracy. The Seventh Circuit affirmed his sentence in 2002. *United States v. Shirazi*, 47 Fed. Appx. 765 (7th Cir. 2002). Shirazi now files a collateral attack against his conviction and sentence pursuant to 28 U.S.C. § 2255.

**Background History**

Saleem Shirazi (also known as "Khaleel Mohammad") entered a plea agreement by which he admitted that from August to October 2000, he conspired with his co-defendants and with others to make, utter, and possess counterfeit Visa traveler's checks, with the intent to

deceive other persons and organizations. According to the facts admitted in the plea agreement, two of Shirazi's co-defendants went to a bank in Lincolnwood, Illinois in August 2000, where they purchased valid Visa traveler's checks. Co-defendant Rajiv Saneja took possession of the checks. Saneja, who did not drive, then rode with Shirazi to California. While in California, Shirazi and Saneja made counterfeit traveler's checks, which they brought back to Chicago.

Saneja recruited additional co-defendants and others to pass the counterfeit traveler's checks at various stores in the Chicago area. Shirazi generally kept the counterfeit checks in his possession until Saneja was ready to distribute them. The co-defendants used false names and counterfeit identification to conceal their acts, the purpose of their acts, and the conspiracy. After receiving the counterfeit checks, the check casher co-defendants drove to various businesses in the greater Chicago area, where they made small purchases and paid with the fraudulent checks. The check cashers passed at least 432 counterfeit traveler's checks in this manner. Each check casher kept 60% of the proceeds of the fraud. The remainder went to Saneja, who evenly split the proceeds with Shirazi.

On October 17, 2000, Shirazi and Saneja left a Motel 6 in Glenview, Illinois, where they had been living. They drove out of the parking lot in their van, and were quickly pulled over by Glenview police officers for a traffic stop. Earlier that day, the Glenview Police Department had received an anonymous call, notifying them that two individuals involved in credit card fraud were staying at the Glenview Motel 6, and providing a description of the van the individuals were driving. According to the Glenview police, Shirazi, who was driving, changed lanes without signaling and failed to display a front license plate on the van in violation of Illinois law.

Shirazi identified himself as Khaleel Mohammad[1] of Los Angeles, California, with a birthday of September 17, 1970. A check of that name and birth date revealed an expired and suspended California drivers' license. Shirazi, as Khaleel Mohammad, signed a consent to search form for the van. Inside the van, officers discovered drug paraphernalia, a magazine for a semi-automatic handgun, and a large amount of cash.

Shirazi told the police that he and Saneja, who was using the name Jasvir Kumar, had checked out of their room, number 105, at the Motel 6 and were leaving the area. The police wished to examine the room in which they had stayed, and Shirazi and Saneja drove the van back to the hotel, accompanied by the police. At the hotel manager's office, the police learned that Shirazi had checked out of room 105 a few days earlier, but had moved into room 107, where he was still registered. Shirazi denied knowledge of room 107. No one answered when police knocked on the door. The hotel manager opened the door to the room, and the police, the manager, and Shirazi entered. Eight or nine pieces of luggage were in the room, but had no identifying information on their exteriors. A Glenview Police Officer asked Shirazi if a medium sized black suitcase belonged to him. Shirazi denied ownership. The officer opened the bag and saw an unaddressed Federal Express mailing envelope sitting on top of the items in the bag. The

---

[1] The spelling and name varies from Petitioner to Government and even from document to document. The Glenview police report refers to Shirazi's alias as "Khaleel Zaahid Mohammad" but Shirazi refers to his "present name Mohammed Khaleel." According to Petitioner, he also had an Arizona driver's license at the time of his arrest, which was in the name "Mohammad Khaleel," who was described as a resident of Phoenix, Arizona. This Court notes that Petitioner submitted a photocopy of the Arizona driver's license, which shows that it was issued on April 21, 1998 and gives an expiration date of August 14, 2031. But the fact that Petitioner also had a driver's license in the name "Mohammed Khaleel" does not mean he did not identify himself to the Glenview police officers as "Khaleel Mohammad." It is reasonable to infer that Petitioner used multiple aliases, including "Khaleel Mohammad" and "Mohammed Khaleel."

envelope contained several stacks of Visa traveler's checks with almost identical serial numbers. Also in the bag was stock paper printed with three Visa traveler's checks per sheet, a shaving kit containing several bottles containing a clear liquid and labeled "Ketamine," and several large green disks in a bag, which the police suspected were cannabis or hashish. In addition, several pieces of mail addressed to Khaleel Mohammad and Roll and Stone Productions were also visible in the bag. At that point, the Glenview police took both Shirazi and Saneja into custody and informed them of their *Miranda* rights. After additional search, the police discovered a small caliber semi-automatic handgun in the bag and multiple bottles and containers of suspected illicit drugs. In Petitioner's room at the Motel 6, police also found well more than fifteen counterfeit and unauthorized credit cards. In addition, agents found approximately 886 counterfeit Visa traveler's checks in Shirazi's bags, several forms of false identification, a magnetic card reader, a desk top computer, and a laptop computer.

At the Glenview police station, Glenview police officers advised both Saneja and Shirazi of their *Miranda* rights and interviewed them. Shirazi refused to make a statement. By this time, the FBI had identified Saneja and advised the Glenview police that there was an outstanding federal warrant for him out of Missouri. Some time on October 18, 2000, the FBI identified Shirazi's fingerprints as those of Saleem Agazani Shirazi. After being informed of the identification, Shirazi acknowledged that he was Saleem Shirazi.

During the evening of October 17, 2000, Shirazi complained of chest pain and was taken by the Glenview Fire Department to Glenbrook Hospital. After an examination, the doctor on call reportedly prescribed two medications, Gaviscon and Prevacid, and released Shirazi back to the Glenview Police Department's custody.

The FBI interviewed Shirazi at the Glenview Police Station and obtained his signature on a consent to search form for "any electronic storage media" found in the hotel room for evidence relating to credit card and traveler's check counterfeiting and fraud. The search was conducted with the aid of a file recovery program called EnCase, which enables a user to retrieve files that have been deleted but remain on a computer's media storage device such as a hard drive. While examining the desk top computer, FBI agents discovered files containing hundreds of stolen credit card numbers. In addition, they asserted that they inadvertently discovered a file containing a pornographic image involving a child. The FBI sought and received a warrant to search the computers and seventy-four floppy disks recovered from Room 107. The search identified several dozen images of child pornography.

At the time of his arrest in October 2000, Shirazi had approximately 886 counterfeit traveler's checks in his possession. The total amount of the actual and intended loss stemming from the counterfeit checks possessed and passed by Shirazi and his co-defendants was found to be approximately $131,800. American Express, which was the issuer of at least three of the unauthorized and counterfeit credit cards, incurred losses in the amount of at least $39,499.17.

In early 2001, Shirazi was indicted by a federal grand jury. Ultimately, all of the co-defendants pleaded guilty to conspiracy to make, utter, and possess counterfeit Visa traveler's checks in violation of 18 U.S.C. § 371, which was Count One of the superseding indictment. In his plea agreement, Shirazi acknowledged as relevant conduct his possession of stolen credit card numbers, counterfeit credit cards, and unauthorized credit cards found in his motel room. Shirazi additionally stipulated to possession of child pornography, an uncharged offense, for the purpose of computing his sentence.

This Court held a change of plea hearing on November 15, 2001. During the plea colloquy, Shirazi indicated that he had read and understood the plea agreement, that he was satisfied with the efforts and advice provided by his appointed counsel, and that he understood that pleading guilty would waive his trial rights and the right to appeal the determination of guilty. Shirazi also stated that his decision to plead guilty was voluntary. He then entered a plea of guilty.

Shirazi's sentencing hearing occurred on March 5, 2002. This Court heard testimony and argument relating to the amount of loss from the conspiracy, and whether Shirazi qualified for a role-in-the-offense enhancement for being a "manager or supervisor" of the criminal activity. Shirazi also made a motion for a downward departure based on his status as a deportable alien. At no point did Shirazi, who testified during the hearing, object to the proposed guideline calculations regarding the stipulated child pornography offense. This Court denied Shirazi's motion for a downward departure. After finding that Shirazi had given false testimony, was not credible, and had not fully accepted responsibility for his criminal actions, this Court imposed a sentence at the high end of the applicable guideline range. Shirazi appealed his sentence, arguing that this Court erred in finding that he was a manager or supervisor of the criminal activity. The appeals court affirmed the sentence.

Shirazi now seeks to vacate his conviction and sentence under 28 U.S.C. § 2255. His lengthy memorandum in support of his habeas petition alleges numerous grounds for relief, including ineffective assistance of counsel, illegal arrest, unlawful search and seizure, unlawful conviction based on coerced confession, and unlawful sentencing based on an offense for which

he had not been indicted. Because this Court finds these arguments meritless, Shirazi's petition for a writ of habeas corpus is denied.

**Analysis**

Shirazi entered an unconditional guilty plea, which "waives all non-jurisdictional defects occurring prior to the plea, including Fourth Amendment claims." *United States v. Elizalde-Adame*, 262 F.3d 637, 639 (7th Cir. 2001). Shirazi's plea was an admission that he was guilty of the actions described in his plea agreement, including the stipulated child pornography offense. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

As a basis for his petition, Shirazi contends that he did not receive effective assistance of counsel. Thus, he contends, his plea was not voluntary and intelligent. But this is a difficult argument to support. Shirazi must establish both that his attorney's performance "fell below an objective standard of reasonableness ... outside the wide range of professionally competent assistance," and also that this deficient performance caused "prejudice" to Shirazi. *Strickland v. Washington*, 466 U.S. 668, 688, 690-93 (1984). Prejudice requires petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When the defendant entered a guilty plea, as Shirazi did in this case, prejudice requires him to show that but for his attorney's deficient performance, he would not have pleaded guilty. *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002). "Failure to satisfy either the performance or the prejudice prong of the *Strickland*

test is fatal to an ineffectiveness claim." *Velarde v. United States*, 972 F.2d 826, 828 (7th Cir. 1992).

Shirazi's first argument is that his counsel was ineffective because he "failed to file for evidentiary and suppression hearing and have it." (Pet'r Br. at 14.) During his change-of-plea hearing, Shirazi stated under oath to this Court that he was satisfied with the advice and efforts of his counsel and stated that his guilty plea was voluntary. Such statements, made under oath, will be presumed to be true. *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002); *Hugi v. United States*, 164 F.3d 378, 381 (7th Cir. 1999). Shirazi thus waived his ineffective assistance of counsel claims.

Even assuming the ineffective assistance claims were not waived, Shirazi fails to satisfy the *Strickland* test. With respect to his failure to file a suppression motion argument, Petitioner provides no information or argument as to what evidence his attorney should have tried to suppress and why. From Shirazi's memorandum, it is reasonable to infer that Shirazi believes both his arrest and the searches of his van and motel room were unlawful because they were based, in his opinion, on an anonymous, uncorroborated tip. But the record reveals that the Glenview police stopped Shirazi for failing to signal a lane change and for failing to display a front license plate on his van, which are legitimate grounds for a traffic stop. *See, e.g., United States v. Robinson*, 314 F.3d 905, 907-908 (7th Cir. 2003). Shirazi signed a written consent-to-search form for the search of the van, albeit using his false name. The motel room search was also consent-based. Shirazi denied that he was registered in or staying in the Room 107. The motel manager opened the door to the motel room, Shirazi disclaimed any knowledge of the items found inside the room and when asked about a specific item of luggage, said he had no

knowledge of the bag or its contents. The police officer opened the bag and reported that he found several pieces of mail addressed to Shirazi under the alias he had given to the officer, in addition to controlled substances and counterfeit traveler's checks. By disclaiming any knowledge or ownership of the luggage and items in the hotel room, Shirazi abandoned them and thus did not have standing to assert a Fourth Amendment challenge to the search or the evidence gathered as a result. *See Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996). Without standing to contest the search, any motion to suppress would have failed. Shirazi has failed to show that his attorney's failure to file a motion to suppress fell below an objective standard of reasonableness.

Next, Shirazi contends that his counsel provided ineffective assistance by failing to seek pre-trial *Brady* material. To establish a *Brady* violation, Shirazi would have to demonstrate three things: 1) that the prosecution suppressed evidence; 2) that the suppressed evidence was favorable to the defense; and 3) that the suppressed evidence was material to an issue at trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Souffront*, 338 F.3d 809, 820 (7th Cir. 2003). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Shirazi first claims that the arresting Glenview police officer falsified his arrest report by stating that Shirazi was driving under a suspended California driver's license in the name "Mohammad Zoheb Khalil" with a birth date of January 29, 1971. But the arrest report does says nothing of the sort. Instead, it reports that Shirazi gave his name as being "Khaleel Zaahid Mohammad" of Los Angeles, and his birth date as September 17, 1970. A search for that identification revealed an expired and suspended California driver's

license. The fact that Shirazi had additional forms of identification in his possession at the time of his arrest, including an Arizona driver's license in the name of "Mohammad Khaleel" is insufficient to demonstrate that the police officer made a false statement. Shirazi fails to demonstrate that any evidence was suppressed or that any allegedly suppressed evidence was material to any issue at trial. It is undisputed that Shirazi was using a false name when he was arrested. The fact that he might have used other false names does not create a *Brady* violation.

Shirazi next contends that the federal prosecutor withheld the information that federal agents would use a file recovery program such as EnCase to undelete previously deleted computer files containing images of child pornography. But the affidavit attached to the Government's request for a search warrant for Shirazi's computers specifically references the fact that the federal agents would use a program such as EnCase in searching for graphical image files of child pornography. This information was provided to Shirazi's counsel in February 2001, more than eight months before Shirazi entered his guilty plea.

Third, Shirazi argues that the Government misled this Court at sentencing by implying that although child pornography was found in Shirazi's computer, he was not charged with possessing child pornography "or his sentence would have been worse." In support of this allegation, Shirazi has submitted an excerpt from the transcript of the sentencing hearing. More to the point, Shirazi has altered the transcript. In the unaltered and correct version of the transcript, the prosecutor states "we haven't talked about the fact there was a child pornography offense here." Apparently dissatisfied with this language, Shirazi removed it and replaced it, in the copy submitted to this Court with his habeas petition, with "we haven't talked about the fact there was a charge of child pornography here." This Court notes that the Government is aware of

Shirazi's tampering with the record and submission of an altered transcript and that Shirazi has exposed himself to additional penalties for his deliberate misrepresentation to this Court. This Court finds Shirazi unreliable and not credible, to say the least, and will not entertain allegations based on fabricated records.

Finally, Shirazi's last *Brady* argument is that the discovery in an Illinois state prosecution against him included "facts, some in more details while some contrary and some not mentioned in federal discovery" is little more than a conclusory statement. Shirazi does not identify what facts he is referring to, nor how such facts were material or even relevant to his case. Shirazi's claim for ineffective assistance of counsel arising from *Brady* violations fails for an almost complete lack of evidence and support.

Petitioner then contends that the Glenview police lacked probable cause both for his arrest and for the search of his motel room. But Shirazi waived these issues by entering a voluntary guilty plea, as discussed previously. *See Elizalde-Adame*, 262 F.3d at 639.

For the first time, Shirazi claims in his habeas petition that his conviction was the product of a coerced confession. Again, this claim relates to conduct and actions that occurred before his voluntary guilty plea. Therefore, Shirazi has waived this argument. *Elizalde-Adame*, 262 F.3d at 639. But even if he had not waived this claim, it is meritless. Shirazi's "confession" to the Glenview police did not mention counterfeit traveler's checks or credit cards. Instead, it focused entirely on how Shirazi had come to be in possession of Ketamine and other drugs, related drug paraphernalia, and a gun. But Shirazi was convicted of conspiracy to possess and utter counterfeit traveler's checks. The plea agreement does not even reference the drugs or the gun found in Shirazi's possession.

With respect to the search of his computers, Shirazi now contends that his signature on the written consent to search form was obtained by coercion, threats, and physical brutality. He did not raise this argument prior to entering his voluntary guilty plea, and has therefore waived it. Furthermore, Petitioner submits nothing more than conclusory allegations in support of his argument. He contends that he was physically assaulted at the Glenview police station and had to be taken to the hospital for chest pain. The record shows that Shirazi was transported to the Glenbrook Hospital after complaining of chest pain. While there he was examined by a doctor and given a prescription for Gaviscon and Prevacid, according to a Glenview Police Department supplemental report dated October 17, 2000. Shirazi provides no evidence to support his contention that his hospital visit was the result of any kind of mistreatment by the police. Moreover, Shirazi did not raise the alleged physical mistreatment at any point before this petition. Instead, he stated that his guilty plea was voluntary and intelligent.

Next, Shirazi claims that his counsel rendered ineffective assistance because he failed to correct alleged errors in the presentence report ("PSR") at the sentencing hearing. The record, however, shows that Shirazi's counsel filed written objections to the PSR prior to the sentencing hearing, but that only two of the objections related to the probation officer's guidelines calculations. This Court heard argument on these objections at the hearing and resolved them prior to sentencing. Shirazi has not shown that he was prejudiced by his counsel's failure to raise the remaining issues, most of which addressed personal and biographical information and did not impact the sentencing range calculation. *Strickland*, 466 U.S. at 693.

Shirazi is also dissatisfied with his counsel's representation on his direct appeal. Specifically, Shirazi contends that his counsel failed to contact him or meet with him prior to

filing the appellate brief. But Shirazi offers no explanation of how his counsel's performance prejudiced him or his appeal. He contends that his counsel did not raise all the issues he wanted to raise in the appellate brief, but this, in itself, is not sufficient to establish ineffective assistance. An appointed counsel is not required to raise all nonfrivolous points requested by the client if she, in her professional judgment, decides not to raise them. *See Smith v. Robbins*, 528 U.S. 259, 287-88 (2000); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As with his other arguments, Shirazi has failed to establish that his counsel's performance met either prong of the *Strickland* test.

Finally, Shirazi objects to the validity of the uncharged child pornography offense which was included in the stipulated relevant conduct portion of his plea agreement. He contends that the "stipulated charge" violates his due process rights because he did not intend to download child pornography onto his computer and "never went looking for these kind of images of children." (Pet'r Br. at 41.) Instead, he argues that he deleted "each and every pornographic images file[]" from his computer approximately five months before his arrest. The law, however, does not support Shirazi's position. First, he did not object to the stipulation relating to his possession of child pornography at or before his change of plea hearing. He did not raise the issue at his sentencing hearing or on his direct appeal. He raises it for the first time in his habeas petition, although he waived the argument by voluntarily pleading guilty. In addition, the evidence directly contradicts Shirazi's argument that he did not "knowingly possess" child pornography. Shirazi wrote letters to his attorney, to the probation officer assigned to his case, and to this Court before his sentencing hearing in which he discussed various aspects of his case. He did not deny that he knowingly possessed child pornography in any of these letters. In fact, in

his letter to the probation officer, Shirazi wrote "I agree that I downloaded lot of pictures from email and some were child pornograpy [*sic*]." (Pet'r Br., Ex. 10 at 16.) He went on to write, "I don't know why it is crime to save such pictures in computer. Its only a picture. But if you think it is a crime than I have done the crime." *Id*. In his letter to this Court, Shirazi stated that "the images were sent to [Shirazi] by other criminally minded participants from America On Line (AOL) chatrooms." (Pet'r Br., Ex. 11 at 4.) He also contends that electronic transmission of child pornography must have involved other people, but notes that "[i]n the instant stipulated crime other participants are not apprehended or convicted." Again he argues that he had deleted the images from his computer before his arrest and contends that the Government failed to disclose that the deleted files had been recovered by a file recovery program during the search. Essentially, Shirazi portrayed himself as a passive recipient of pornographic images involving children and disclaimed any role in manufacturing, distributing, or transmitting the images. He stated that he never sent the images to anyone after receiving them. Shirazi contended that he was thus entitled to a reduction in his offense level because he was nothing more than a passive collector. But Shirazi's own statements support his guilty plea relating to the stipulated offense: he admits downloading pornographic images onto his computer; and he admits that he knew that some of the images were child pornography. The statute does not require him to manufacture, distribute, or transmit the images, but simply to knowingly possess them. 18 U.S.C. § 2252A(a)(5)(B). Shirazi clearly violated the statute.

As for Shirazi's argument that the stipulated conduct was discovered when the Government illegally used a file recovery program to retrieve the deleted files containing pornography from his computer, it is meritless. The Government stated in its affidavit

accompanying its request for a search warrant that it would be using a file recovery program, specifically EnCase, in its search of Shirazi's computer hard drives. The warrant was granted. The mere fact that Shirazi attempted to delete the files before the Government searched his computer does nothing to change the fact that he knowingly possessed the files in violation of federal law. Shirazi's contention that his attorney was ineffective because he did not advise Shirazi not to plead guilty to a plea agreement containing stipulations relating to the child pornography offense is frivolous.

Finally, Shirazi argues that he was improperly sentenced for the stipulated child pornography offense when he had not been formally indicted for it and had not voluntarily stipulated to it. This argument fails. First, Shirazi did not raise this argument prior to entering his plea although the plea agreement plainly tells him that his offense level will increase because of the child pornography offense. (Resp. Br., Ex. 1 at ¶8(g).) Indeed, when asked if his decision to plead guilty was entirely voluntary, he stated that it was. To the extent that he is now contending that his guilty plea was, in fact, involuntary, he must demonstrate both cause and actual prejudice in order to overcome his failure to raise that issue before or must show that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). This he has entirely failed to do. Second, this Court acted properly when applying a offense level enhancement based on Shirazi's stipulated conduct relating to the uncharged child pornography offense. When sentencing a defendant in the case of a plea agreement that contains a stipulation that specifically establishes a more serious offense than the offense of conviction, a court is to determine the offense guideline most applicable to the stipulated offense. *United States v. Loos*, 165 F.3d 504, 507-508 (7th Cir. 1998). Shirazi's remedy was to go to trial rather than enter a guilty plea or to enter a "blind"

plea. He did not do either of these things. Instead, he entered a guilty plea to a plea agreement that stipulated to the child pornography offense and clearly explained how that conduct would increase his offense level. He told this Court, under oath, that his plea was voluntary and that he had read and understood the agreement.

**Conclusion**

For the foregoing reasons, Shirazi's Petition for a Writ of Habeas Corpus is denied.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **May 1, 2006**